# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOYCE LOUISE HAYES,          )<br>                              )<br>       Plaintiff,            )<br>                              )<br>    v.                        )<br>                              )<br> CAROLYN COLVIN,              )<br> Acting Commissioner of Social Security, )<br>       Defendant.            )<br>_____) | 3:13-cv-00182-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE**<br><br>May 1, 2014 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand and/or reversal (#16).[1]  Defendant filed an opposition (#21) and a cross-motion to affirm (#20).  Plaintiff opposed the motion to affirm (#24).  For the reasons set forth below, the court recommends that plaintiff's motion for remand and/or reversal (#16) be denied, and defendant's cross-motion to affirm (#20) be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Joyce Louise Hayes ("plaintiff") was a fifty-one-year-old woman with a high school education on the amended alleged disability date of May 1, 2009 (Administrative Record ("AR") 32, 45).  On July 14, 2010, she protectively filed an application for disabled widow's benefits under Title II of the Social Security Act and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging that she became disabled on January 29, 2003.

---

[1] Refers to the court's docket number.

*Id*. at 25. Defendant Commissioner denied plaintiff's application initially and on reconsideration. *Id*. at 1-38.

On April 5, 2012, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Janice E. Shave. *Id.* at 39-70. The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on April 19, 2012, finding plaintiff had "not been disabled" pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. *Id.* at 25-34. Plaintiff appealed, and the Appeals Council denied review. *Id.* at 1-21. Thus, the ALJ's decision became the final decision of the Commissioner.

On April 12, 2013, having exhausted all administrative remedies, plaintiff filed a *pro se* complaint for judicial review (#1-1). Plaintiff appears to argue that the ALJ's decision was based on legal error, in that her determination of plaintiff's Residual Functional Capacity ("RFC") and her credibility findings were not supported by substantial evidence in the record (#16, pp. 1-7). Accordingly, plaintiff asks the court to reverse or remand the ALJ's decision. *Id.* at 1.

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . " 42 U.S.C. § 423 (d)(1)(A).

### III. DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20

C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 ("Listed Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20

C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); compare *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home

activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth in rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there

are three separate tables, one for each category:سedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai*, 499 F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante*, 262 F.3d at 954.

## B. ALJ's Findings

The ALJ found that plaintiff suffers from the severe impairments of borderline personality disorder and major depressive disorder (AR 28). The ALJ also found that plaintiff retains the RFC to perform a full range of work at all exertional levels, but with several nonexertional limitations. *Id.* at 30.

The ALJ considered plaintiff's age, education, work experience and RFC, and found that plaintiff can perform jobs that exist in significant numbers in the national economy. *Id.* at 33. Accordingly, the ALJ determined that plaintiff "has not been under a disability," as defined in the Social Security Act. *Id.* at 26. Specifically, the ALJ made the following findings:

1. The claimant was previously found to be the unmarried widow of the deceased insured worker; she has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

2. The prescribed period ends on February 29, 2016.

3. The claimant has not engaged in substantial gainful activity since May 1, 2009, the amended alleged onset date (20 C.F.R. § 404.1571, *et. seq.*, and § 416.971, *et. seq.*).

4. The claimant has the following severe impairments: borderline personality disorder and major depressive disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (20 C.F.R. §§§§§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: although able to understand, remember, and carry out simple instructions, she is unable to perform work requiring directing others, abstract thought, or planning. The claimant must have a low-stress job, defined as no more than occasional changes in work setting or only routine workplace changes. The claimant is further limited to no more than occasional contact with the public or co-workers.

7. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant was born on November 13, 1957, and was 51 years old, which is defined as an individual closely approaching advanced age, on the amended disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§§§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 2003, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

*Id.* at 27-34.

## C. RFC Assessment

Plaintiff first challenges the ALJ's RFC finding and apparently contends that the ALJ's decision was based on legal error because her RFC finding was not supported by substantial evidence in the record (#16, pp. 3-4). Plaintiff appears to assert that the ALJ failed to properly evaluate the medical evidence and did not have certain medical records before her. *Id.*

The ALJ must consider the findings of fact and opinions of state agency medical and psychological consultants and other program physicians and psychologists, who are experts in Social Security disability programs. Social Security Ruling ("SSR") 96-6p, 1996 WL 374186. Such consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act . . . . they consider the medical evidence in disability cases and make findings of fact on medical issues, including, but not limited to, the existence and severity of an individual's impairment." *Id.* The ALJ may rely on opinions from state

agency reviewers if those opinions are well-supported and consistent with the record as a whole. *Id*. Due to their independent clinical findings, consultative examiners' reports also constitute substantial evidence. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "[O]pinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p.

Here, the ALJ found that plaintiff had the severe mental impairments of borderline personality disorder and major depressive disorder (AR 28). She then determined that plaintiff's mental impairments did not meet the criteria for a listed impairment because plaintiff's mental impairments did not result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id*. at 29. The ALJ found the following: plaintiff has mild restrictions with respect to activities of daily living; she lives alone and is capable of managing her own hygiene and transportation, but she does not cook or pay her own bills. She has moderate difficulties with social functioning. Her parents live nearby, and she speaks with them daily; her father picks her up frequently. She does not have any friends and spends most of the day in her house with the curtains closed. She has moderate difficulties with respect to concentration, persistence or pace; she does not finish what she starts, and she must ask people to repeat spoken instructions. Plaintiff has experienced no episodes of decompensation of extended duration. The ALJ based her conclusions on plaintiff's hearing testimony and on the fact that the "record does not show a medically documented history of a chronic affective disorder" that has caused more than a minimal limitation of plaintiff's ability to perform basic work activities. *Id*.

The ALJ also considered the opinion of state agency psychological consultant Harvey Bilik, Psy.D., who concluded that the medical evidence of record did not support plaintiff having ongoing marked functional limitations in any domain resulting from a mental disorder. *Id.* at 31, 287-289. He based his opinion on the only medical evidence of record—a consultative examination by Les P. Kalman, M.D., Psy.D—in which the plaintiff was cooperative but demonstrated a possible attention/concentration impairment, but was still able to perform basic math and had an estimated average IQ. *Id.* at 31, 273-275. Dr. Bilik further considered plaintiff's lack of psychiatric hospitalizations, mental health treatment, or recent/current use of psychotropic prescriptions. *Id.* at 286. Apart from the consultative examination, the only other evidence regarding plaintiff's mental health is from August and September 2010, when she reported to Nurse Practitioner Kathleen Walsh that she felt sad and depressed. The ALJ accorded great weight to Dr. Bilik's consultative opinion because it is consistent with the record as a whole, that is, that the very limited amount of objective medical evidence fails to provide strong support for plaintiff's allegations of disabling symptoms and limitations. *Id.* at 31.

State agency physician Dave Sanford, Ph.D. reviewed the medical evidence as well as Dr. Bilik's conclusions. *Id.* at 306-308. Dr. Sanford concluded the following: plaintiff could understand and carry out routine simple directions. Her concentration was limited, but she retained the capacity to perform routine non detailed tasks consistently at a productive pace within a schedule. Her general social skills were intact, but she would have difficulty interacting frequently with coworkers and the public. She would perform best in a routine, non-detailed, structured work setting with limited changes. *Id.* at 308. The ALJ incorporated and adopted these limitations in her RFC finding, concluding that plaintiff could only work in low stress jobs where there are no more

than occasional or routine changes in work setting and that she could only have occasional contact with co-workers and the public. *Id*. at 30.

Plaintiff's treating nurse practitioner, Kathleen Walsh, N.P., filled out a General Assistance Verification of Physical/Mental Incapacity form on September 1, 2010. *Id*. at 271. Ms. Walsh opined that plaintiff suffered from emotional distress and depression and was unable to handle interaction with co-workers appropriately or handle changes or stresses in the work environment. Ms. Walsh indicated that she was unable to determine how long plaintiff would be unable to work, but anticipated that plaintiff's disability would last more than six months. *Id*. However, Ms. Walsh's treatment notes indicated that when plaintiff saw her in August 2010 for a gynecological complaint, plaintiff was feeling down and depressed after the death of her husband, but was not suicidal and had no thoughts of harming herself. *Id*. at 265. Plaintiff had not seen a therapist, but expressed interest in doing so. *Id.* Ms. Walsh's notes reflect that plaintiff was teary when discussing her husband's death, wanted to see a counselor and wanted to move on with her life. The ALJ ultimately rejected Ms. Walsh's opinions as set forth on the incapacity form to the extent they contradicted the ALJ's RFC finding because Ms. Walsh's statements on the largely check-the-box form were conclusory and because her own treatment notes contradicted the conclusion that plaintiff's mental impairments were severe enough to prevent her from working. *Id*. at 32. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2003) (treating physicians' views carried only minimal evidentiary weight because they were in the form of a checklist, did not have supportive objective evidence and were inconsistent with other evidence).

With respect to any physical disabilities, the ALJ observed that the record contains diagnoses of an elbow fracture, acute facial contusions and degenerative changes in plaintiff's back. *Id*. at 28. The ALJ stated that no evidence indicates that plaintiff required any further treatment for her elbow

and face after she was placed in an arm splint and sling and given pain medication. After a June 2011 slip and fall, plaintiff received chiropractic treatment for two months for neck, back, hip and knee pain. Upon discharge, plaintiff reported that most of her pain had resolved and that she had occasional back pain about ten percent of the time that rated a two on a scale of ten. The ALJ discussed plaintiff's history of alcohol abuse and stated that no evidence indicates that such abuse caused plaintiff any more than minimal functional limitations. Finally, while at the hearing plaintiff claimed disability, in part, due to "left-hand seizures," the record reflects no signs, symptoms, or medical findings demonstrating the existence of a medically determinable impairment affecting the claimant's left upper extremity. *Id*. at 28.

The ALJ then concluded that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: although able to understand, remember, and carry out simple instructions, she is unable to perform work requiring directing others, abstract though, or planning. The claimant must have a low-stress job, defined as no more than occasional changes in work setting or only routine workplace changes. The claimant is further limited to no more than occasional changes in work setting or only routine workplace changes. The claimant is further limited to no more than occasional contact with the public or co-workers. *Id*. at 30.

Plaintiff appears to argue that the ALJ did not have all the medical evidence before her (#16, p. 2). Plaintiff claims the following: she now cannot walk without a cane due to back and leg pain, "which has not helped [her] severe depression and anxiety." *Id*. at 3. Her depression has caused her to have three bacterial infections in nine months. She cared for her husband for four years before he died of Lou Gehrig's disease, which has left her with severe depression and anxiety. She has been diagnosed at least six times in ten years with severe depression and back pain from lifting her

husband. Her leg pain prevents her from sleeping, her concentration is "severely damaged" and she is not able to function in a job environment. *Id*. at 3-7. Plaintiff attached what appear to be discharge instructions from various doctor visits, including the August 2010 visit to a Santa Rosa, California clinic where she was seen by Ms. Walsh, the August 2011 slip and fall incident, an August 2013 emergency room visit when she was diagnosed with shingles, and a January 2014 emergency room visit when she was diagnosed with a urinary tract infection. *Id*. at 8-45.

In her opposition to defendant's cross motion to affirm, plaintiff argues that the ALJ improperly discredited Dr. Kalman's consultative opinion (#24, p. 4). She also contends that she would have continued treatment with Kathleen Walsh but at that time she was homeless with mental disorders so instead she returned to Reno so that her family could care for her. *Id*. at 5-6.

Plaintiff bears the burden of proving disability. See 20 C.F.R. §§ 404.1512(a), 416.912(a). Plaintiff had counsel at the hearing before the ALJ; thereafter, she appealed the ALJ decision to the Appeals Council *pro se*. AR 1-21. The court is mindful that plaintiff is proceeding in this court *pro se*; however, there is simply no support in the medical records for plaintiff's contention that mental impairments have rendered her completely incapable of working. Despite the limited treatment and objective findings, the ALJ still limited plaintiff to unskilled, low-stress work, and the RFC determination incorporated the conclusions of the state-agency physician, the consultative psychological examiner, and the consultative psychological consultant. *Id*. at 31-32. The court notes that while plaintiff claimed that the ALJ improperly disregarded the opinions of consultative examiner Dr. Kalman, in fact, the ALJ accorded some weight to his objective findings. *Id*. These physicians' opinions are consistent with the medical record as a whole. The ALJ set forth an appropriate basis for according less weight to Ms. Walsh's opinions as set forth on the incapacity form because Ms. Walsh's statements on the largely check-the-box form were conclusory and

because her own treatment notes contradicted the conclusion that plaintiff's mental impairments were severe enough to prevent her from working. *Id*. at 32. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physicians' views carried only minimal evidentiary weight because they were in the form of a checklist, did not have supportive objective evidence and were inconsistent with other evidence). An ALJ may permissibly reject a treating physician's opinion when that opinion is inconsistent with the physician's own treatment notes and when the opinion is not supported by clinical findings. See 20 C.F.R. §§ 404.1527(c)(3) & (c)(4); *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009). Accordingly, the court finds that substantial evidence supports the RFC determination.

**D. Credibility Determination**

The court also construes plaintiff's motion as arguing that the ALJ's findings as to her credibility were not supported by substantial evidence in the record, and that she failed to articulate clear and convincing reasons for rejecting plaintiff's pain and limitation testimony (#16).

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must evaluate the credibility of a claimant's subjective testimony in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged" (*id.* at 1036; 42 U.S.C. § 423(d)(5)(A) ("an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability")). If the claimant meets the first test and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of the symptoms if he or she gives 'specific, clear and convincing reasons' for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

"Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). While medical opinions are not controlling in assessing credibility, they are nonetheless probative evidence for the ALJ to consider. 20 C.F.R. §§ 404.1529(c), 416.929(a)(2012); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The causal relationship between the objective evidence of a medical impairment and the claimant's complaints need only be a "reasonable inference," not a "medically proven phenomenon." *See Smolen*, 80 F.3d at 1282.

In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements that she is unable to work due to her mental conditions and limitations are not credible to the extent they are inconsistent with the ALJ's RFC determination. AR 30. The ALJ found that evidence indicates that plaintiff worked after her amended alleged onset date of disability. Her last job did not end due to her alleged mental conditions; she testified that she stopped working at her last job in July 2011

because of pain affecting her back, which is not one of the conditions she claims has caused her disability. The ALJ further found that plaintiff's testimony that chiropractic treatment in fact made her feel worse is inconsistent with the record. *Id*. at 31, 60-61. The medical records indicate that at the conclusion of every chiropractic appointment, plaintiff reported that she felt better with treatment. The chiropractor also consistently noted plaintiff's "remarkable improvement." *Id*. at 334-355. The ALJ observed that "[a]lthough the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless, the inconsistencies suggest the information provided by the claimant generally may not be entirely reliable." *Id*. at 31. Plaintiff attached her letter to the Appeals Council to her motion, and in it she states that she "felt bad" telling the chiropractor that he was not actually helping her, but was making her pain worse (#16, p. 38).

The ALJ also noted that plaintiff collected unemployment compensation during the time period at issue. *Id*. She stated that "[o]verall [plaintiff's] work after the amended alleged onset date and contemporaneous filing for unemployment while alleging disability reflects a poor motivation to work, which detracts from the credibility of her allegations." *Id*. The Ninth Circuit has deemed the collection of unemployment benefits a valid consideration in evaluating a claimant's testimony. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161-62 (9th Cir. 2009) ("receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime" when he is holding himself out as available for work): *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). The ALJ thus may properly consider that a claimant's holding herself out as available for work appears inconsistent with her alleged inability to work as stated in her disability application. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (inconsistencies in testimony and inconsistences between testimony and conduct may be considered in weighing a claimant's credibility).

-17-

The court concludes that the ALJ's credibility determination is supported by the record and that she did not arbitrarily discredit plaintiff's subjective testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Bunnell*, 947 F.2d at 345-46) (lack of objective evidence to support a claimant's description of her pain and limitations is a valid reason to discount her testimony); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (testimony's inconsistency with the medical record is a valid reason for rejecting the testimony). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti, v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ properly weighed that plaintiff was not receiving any physical or mental health treatment, had worked and was collecting unemployment after the amended alleged onset of disability, and testified about her mental limitations in a manner inconsistent with the medical records and evaluations. The court recognizes that the ALJ's credibility determination is entitled to deference if it is supported by substantial evidence in the record, and the court finds that the ALJ properly supported and adequately explained her partially adverse credibility determination with specific, clear, and convincing reasons. Accordingly, remand or reversal is not warranted.

**E.  New Evidence**

Finally, as noted earlier, plaintiff included with her motion documents relating to August and September 2013 emergency room visits for shingles and a January 2014 emergency room visit for a urinary tract infection (#16, pp. 23-32, 41-44). In her letter to the Appeals Council (included with the motion), plaintiff claims that at that point she had difficulty standing, sitting, driving, and lying in bed, that she suffered nerve pain and "nerve seizures" in her legs daily, that her ankle was still swollen and twisted, that it was hard for her to do any daily activities, and that all of these issues have greatly exacerbated her stress level and her depression. *Id*. at 38-40.

Defendant is correct that, while potentially relevant to a subsequent application for benefits, these records and allegations do not relate to present issue, which is whether plaintiff was disabled from May 1, 2009 through April 19, 2012, the date of the hearing before the ALJ.  *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 512 (9th Cir. 1987) ("The new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing").  Pursuant to 42 U.S.C. § 405(g), this court may only remand a case to the Commissioner for consideration of new evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *See also Allen, v. Sec'y of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).  Plaintiff's subsequent proffered evidence and allegations that she has new, serious, physical impairments and that her mental impairments have worsened significantly are not probative of her condition as it existed at the relative time, and therefore, they cannot be the basis for a remand.

### IV. CONCLUSION

Based on the foregoing, the court concludes that substantial evidence in the record supported the ALJ's RFC determination.  Regarding plaintiff's credibility, the ALJ gave specific, clear and convincing reasons for partially discounting plaintiff's subjective symptom testimony, and this decision also was supported by substantial evidence in the record.  The court therefore recommends that plaintiff's motion for remand and/or reversal (#16) be denied and that defendant's cross-motion to affirm (#20) be granted.  Finally, plaintiff's motion for review of document USM-285 returned executed (#23) should be denied as moot.  The parties are advised:

1.	Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2,  the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.

These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand and/or reversal (#16) be **DENIED** and defendant's cross-motion to affirm (#20) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for a review of USM-285 returned executed (#23) be **DENIED** as moot.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.

**DATED:  May 1, 2014.**

_____
**UNITED STATES MAGISTRATE JUDGE**